**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 20-cv-0463-WJM

TAMMY ANN VALOIS,

>   Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

>   Defendant.

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Tammy Ann Valois ("Valois"), proceeding *pro se*, challenges the final decision

of Defendant, the Commissioner of Social Security ("Commissioner"), denying her

application for disability insurance benefits.  The denial was affirmed by an

administrative law judge ("ALJ"), who ruled that Valois was not disabled within the

meaning of the Social Security Act.  This appeal followed.

For the reasons set forth below, the ALJ's decision is affirmed.

## I.  BACKGROUND

Valois was born in 1968 and was 46 years old on the alleged onset date of June

11, 2015.[1]  (Administrative Record ("R.") at 73–74 (ECF Nos. 12, 12-1–12-13).)  She

---

[1] Valois originally listed her alleged onset date as May 21, 2015.  (R. at 74.)  However, at her June 22, 2018 hearing before the ALJ, Valois amended her alleged onset date to June 11, 2015.  (R. at 37, 43.)

has an eighth-grade education.  (R. at 50.)  In the years preceding the alleged onset

date, she worked as an appointment setter, an assembly worker, and an operating room

assistant.  (R. at 83–84.)

Valois applied for disability insurance benefits on December 29, 2016.  (R. at

162.)  She claims that she is disabled due to the following conditions: fibromyalgia,

chronic migraines, high WBC [white blood cell] count, knees, RA [rheumatoid arthritis],

IBS [irritable bowel syndrome], ulcer – stomach, hips, and back.  (R. at 74.)  Her

application was denied on May 17, 2017.  (R. at 91.)  Valois requested and received a

hearing in front of an ALJ, Shane McGovern.  (R. at 37, 99.)  On November 20, 2018,

the ALJ issued a written decision in accordance with the Commissioner's five-step

sequential evaluation process.[2]  (R. at 14–38.)

At step one, the ALJ found that Valois had not engaged in substantial gainful

activity from her amended alleged onset date of June 11, 2015 through her date last

insured of September 30, 2017.  (R. at 19.)

At step two, the ALJ found that Valois had the following severe impairments:

rheumatoid arthritis/osteoarthritis, status post left hip surgery, obesity, and migraine

headaches.  (R. at 19.)  The ALJ concluded, however, that Valois's "degenerative disc

disease/osteoarthritis is not a severe impairment"; her "persistent leukocytosis . . . is not

severe"; her irritable bowel syndrome is not severe; her depression is not severe; and

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration

her fibromyalgia has not been established as a medically determinable impairment. (R. at 19–22.)

At step three, the ALJ found that Valois's impairments did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (R. at 22–23.)

Before proceeding to step four, the ALJ assessed Valois's residual functional capacity ("RFC"). The ALJ concluded that Valois has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a), except she: cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel and crawl; can frequently handle, finger, and feel bilaterally; should have no exposure to extreme cold, moving mechanical parts, unprotected heights, and excessive vibration. (R. at 23.) Then, at step four, the ALJ concluded that Valois was capable of performing past relevant work as an appointment clerk. (R. at 30.)

Making alternative findings for step five, the ALJ found that Valois's RFC permitted her to work as a food and beverage order clerk, credit information clerk, and document preparer, and that all of those jobs exist in sufficient numbers in the national economy. (R. at 32.)

Accordingly, the ALJ found that Valois was not entitled to Social Security benefits. (R. at 32.) Valois appealed to the Socials Security Appeals Council, which denied review. (R. at 7.) Valois then filed this action seeking review of the ALJ's November 20, 2018 decision. (ECF No. 1.)

**STANDARD OF REVIEW**

To be eligible for disability insurance benefits under Title II of the Act, Plaintiff

---

has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

had to prove that she was totally disabled before her insured status expired on September 30, 2017. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports his factual findings and whether the ALJ applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither "reweigh the evidence nor substitute its judgment for that of the agency." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004)). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

## ANALYSIS

The Court construes Valois's appeal to include the following arguments: (1) that the ALJ erred by not giving additional weight to opinions of a treating physician and physician assistant ("P.A."); and (2) that the ALJ erred by determining her RFC and determining that there are jobs in the national economy that she can perform.  (ECF No. 13 at 1.)

### A.      Weight Given to Treating Physician & P.A.

Valois argues that the ALJ erred in his evaluation of the medical evidence in the record.  Specifically, she cites the Physical Medical Source Statements submitted by Travis Bellville, M.D., and Kirck Prochnio, P.A., and argues that the ALJ should have given greater weight to their opinions.  (*See* ECF No. 13 ("My primary doctors feel that I am disabled, but doctors who have never met me or understand my issues have deemed me able to function in normal day to day activities or routines.").)

Dr. Bellville and P.A. Prochnio submitted opinions on May 1 and May 7, 2018, respectively, stating that Valois can stand for 15 minutes at one time; can sit and stand/walk for less than 2 hours in an 8-hour working day; needs to take breaks every fifteen minutes to an hour for muscle weakness, chronic fatigue and pain; can only use her hands, fingers, and arms for 5% to 10% of an 8-hour working day; is likely to be off-task for 25% or more of the day; and is incapable of even "low stress" work.  (R. at 680–87.)  Neither opinion explains which conditions existed prior to Valois's date last insured, *i.e.*, September 30, 2017.

The ALJ gave "little weight" to these two opinions.  (R. at 29–30.)

5

1.     Standard for Weight Given to Treating Physicians & Physician Assistants

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  When, as here, the ALJ disregards a treating physician's medical report, "he must set forth 'specific, legitimate reasons' for his decision." *Id.*

The ALJ may also use evidence from "other sources" to show the severity of the claimant's impairments and the impairments' impact on a claimant's ability to function. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  "Other sources" include, but are not limited to, nurse practitioners and physician assistants.  *Id.* "Information from these 'other sources' [unlike acceptable medical sources] cannot establish the existence of a medically determinable impairment[,]" but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.*

However, an ALJ is not required to give controlling weight to the opinions of other sources, such as a physician's assistant.  *See Shubargo v. Barnhart*, 161 F. App'x 748, 751–52 (10th Cir. 2005).  Rather, the ALJ should consider information from "other sources" to determine whether such information "support[s] or contradict[s] a medical opinion."  SSR 06-03p, 2006 WL 2329939, at *4.  Generally, the ALJ should explain the weight given to the opinions from "other sources," "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6.

6

Moreover, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted). While an ALJ must do more than simply "recite[ ] the general factors he considered," so long as "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," his determination must stand. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

### 2.   Dr. Bellville

In assigning little weight to Dr. Bellville's opinion, the ALJ explained that Dr. Bellville rendered his opinion approximately 8 months after the Valois's date last insured and that the "overall record is not consistent with Dr. Bel[l]ville's opinion that the claimant could not sustain work." (R. at 29.) In particular, he focused on the fact that Dr. Bellville's treatment notes do not indicate that Valois had to shift position or frequently elevate her legs, and that he stated that she had a "reassuring functional capacity" on August 30, 2017. (*Id.*) Moreover, the ALJ noted that Valois had not sought treatment for migraine headaches until July 26, 2017; at her next appointment, she reported that she had taken a new medication from her neighbor that worked immediately and had no side effects. (*Id.*)

The Tenth Circuit has recognized that although "a treating physician may provide a retrospective diagnosis of a claimant's condition," the "relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990) (emphasis in original). "A retrospective diagnosis without evidence of actual disability is insufficient."

*Id.*

The Court finds that there is substantial evidence in the record supporting the ALJ's determination that Dr. Bellville's opinion is inconsistent with the overall record of Valois's conditions as of September 30, 2017.  For example, although Dr. Bellville's treatment notes state that Valois suffered from some level of fibromyalgia and rheumatoid arthritis (R. at 547), his August 30, 2017 treatment notes state that Valois has "[n]o motor weakness, no sensory changes," "[n]o myalgias or arthralgias," and [n]o gross sensory or motor deficits."  (R. at 535–36.)  On the same day, he noted that Valois "has reassuring functional capacity" prior to her left hip surgery.  (R. at 535.)  These findings—made exactly one month before Valois's date last insured—are not consistent with Dr. Bellville's later retroactive opinion that Valois can only use her hands, fingers, and arms for 5% of the day and is capable of even low stress work.  *See White v. Barnhart*, 287 F.3d 903, 907–08 (10th Cir. 2002) (treating physician's lack of explanation for differences between two reports, with no change in claimant's medical condition, was a reason to reject opinion).

Thus, although there is some evidence that would support a finding that Valois is disabled, the ALJ provided valid reasons for giving little weight to Dr. Bellville's opinion that are supported by substantial evidence.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict."); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

Therefore, Valois has failed to show that the ALJ erred in giving little weight to

Dr. Bellville's opinions.

3.      P.A. Prochnio

The ALJ also assigned little weight to P.A. Prochnio's opinion on the basis that

Prochnio "is not an acceptable medical source" and because his retroactive opinion that

Valois could not work is not consistent with the overall record.   (R. at 30.)  Specifically,

the ALJ found that Prochnio's treatment records suggest that Valois was doing

reasonably better on certain medications, had a normal gait, and had "5/5 strength in all

muscle groups."  (*Id.*)

As explained above, a physician assistant's opinion "does not carry the same

weight as the medical opinion of a licensed physician."  *Shubargo*, 161 F. App'x at 751–

52.  Nonetheless, the Court finds that there is substantial evidence in the record

supporting the ALJ's determination that P.A. Prochnio's opinion is inconsistent with the

overall record of Valois's conditions as of September 30, 2017.  For example, on

December 29, 2016, P.A. Prochnio's records reflect that although Valois was

experiencing muscle pain, she did not report any headaches, dizziness, arthritis, joint

swelling, muscle cramps, back pain, joint pain, or stiffness.  (R. 397.)  He reported that

Valois had a normal gait and "[s]trength 5/5 in all muscle groups."  (R. at 399.)  These

findings are consistent with Douglas Hemler, M.D.'s review of Valois's symptoms on

May 11, 2017, June 15, 2017, July 24, 2017, August 3, 2017.  (R. at 615–16, 620–22,

625–26, 629–31.)  Moreover, Valois's treatment records from 2017 suggest that her

elbow and wrist pain, along with other general myalgias, improved with medication.  (R.

at 616, 619–20.)

Therefore, Valois has failed to show that the ALJ erred by giving little weight to

P.A. Prochnio's opinions.

**B.      Determination of Available Jobs Within Valois's RFC**

After consulting with a vocational expert, the ALJ concluded that "through the

date last insured, considering the claimant's age, education, work experience, and

residual functional capacity, [Valois] was capable of making a successful adjustment to

other work that existed in significant in the national economy," including work as an

appointment clerk, food and beverage order clerk, credit information clerk, and

document preparer.[3]  (R. at 31–32.)

Valois argues that the ALJ failed to properly consider her medication's side

effects when determining her RFC, and that he erred in finding that there are jobs in the

national economy that she can perform.  (ECF 13 at 1–2 ("All medications are taken

daily, all side effects and warnings need to be understood by the courts, not taken by

the judges presiding over my case.").)  She states that her medications make her

drowsy and "not fully aware of [her] surroundings," limit her ability to get to and from

work safely, and "could induce bow[e]l movements at inopportune times."  (*Id.*)

A Social Security Ruling states that ""[t]he RFC assessment must be made

based on *all* of the relevant evidence in the case record, such as . . . [t]he effects of

treatment, including limitations or restrictions imposed by the mechanics of treatment

---

[3] Valois states, "Finding gainful employment with learning disabilities (understanding /
reading), no High[ ]school degree, and medical conditions I explain daily, I feel that the job
advocates and the judges fail to understand that an employer would not find me suitable to bring
on." (ECF No. 13 at 1.)  However, the ALJ expressly considered Valois's education, age, work
experience, and RFC in determining that there are jobs that exist in significant numbers in the
national economy that Valois could perform.  (R. at 31–32.)  To the extent Valois is arguing that
the ALJ should have considered her prospects for obtaining these jobs, the Court notes that
Valois offers no case law suggesting that this is an additional factor that the ALJ must consider,

(e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96–8P, 1996 WL 374184, at *5.

The ALJ did not expressly determine whether side effects from Valois's medications affected her RFC assessment. The Court nonetheless concludes that Valois has not established that any medication side effects were a limitation that should have been accounted for in the RFC finding. Significantly, Valois does not cite any treatment records reflecting her contemporaneous complaints about side effects of her medications. Nor do the treatment records support the notion that Valois experienced significant side effects from medications that would affect her RFC.

First, on April 13, September 13, September 22, and October 24, 2016, Valois reported that she was not experiencing any side effects or adverse drug reactions from her medications. (R. at 427, 430, 447, 451, 492.)

Second, on April 5, May 11, June 15, July 24, and August 3, 2017, Valois reported that she was not experiencing fatigue, weakness, headaches, dizziness, abdominal pain, constipation, nausea, diarrhea, change in bowel habits, urinary urgency or incontinence, or sleep disturbances. (R. at 615, 620, 625, 629, 634.) Her treating physicians and other medical providers also observed that Valois was "[o]riented to person, place, time and general circumstances" and was "in no apparent distress." (R. at 616, 621, 625, 630, 635.)

Third, a July 26, 2017 treatment note reflects that Valois tried a migraine medication that made her fatigued and that she also experienced side effects from a depression medication before she began "self-limiting" her doses of the medication. (R.

_____

and the Court is not aware of any such requirement.

at 540.)  However, at her next appointment on August 30, 2017, Valois reported that she began taking an "unspecified medication that her neighbor had" for her migraines that "worked immediately and had no side effects."  (R. at 535.)  The treatment note reflects that Valois would determine what that medication was and inform her doctor. (*Id.*)

To the extent Valois is relying upon her own testimony and subjective complaints regarding side effects, the ALJ determined that Valois's allegations were inconsistent with the objective medical evidence and activities of daily life.[4]  (R. at 28.)   Valois has not challenged the ALJ's credibility determination or otherwise provided any basis suggesting that the ALJ's determination is not supported by substantial evidence.

Moreover, even if the ALJ erred by not specifically stating reasons for not including limitations related to side effects of medication in the RFC, any such error is harmless.  *See, e.g.*, *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (an "ALJ's failure to conduct a more particularized assessment of mental functions at step four [is] harmless error [when] [t]here is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the] RFC.").

Thus, the Court finds that as failed to show that her medication side effects were a moderate limitation that should have been accounted for in the ALJ's RFC finding.

---

[4] For example, during her ALJ hearing, Valois stated that she drives two to three times a week.  (R. at 47–48.)

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial

of benefits.  The Clerk shall enter judgment in favor of Defendant and terminate this

case.  Each party shall bear her or its own attorneys' fees and costs.

Dated this 12th day of February, 2021.

BY THE COURT:

_____

William J. Martinez
United States District Judge

13